Annette **GORDON–HOWELL**, Plaintiff,

v.

**PENN–PLAX, INC.**, Defendant.

**No.  CIV.A. 01–2347–KHV.**

United States District Court,
D. Kansas.

Nov. 15, 2002.

Marie L. Gockel, Lynne J. Bratcher, Bratcher & Gockel, L.C., Kansas City, MO, Allan B. Gallas, Gallas & Schultz, Kansas City, MO, for Plaintiff.

Patrick E. McGrath, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Overland Park, KS, for Defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Annette Gordon–Howell brings suit against Penn–Plax, Inc., for violation of the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k). This matter comes before the Court on *Defendant's Motion For Summary Judgment* (Doc. # 21) filed July 26, 2002. For reasons stated below, the Court overrules defendant's motion.

### I. Summary Judgment Standard

·Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538–39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252, 106 S.Ct. 2505.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. City Of Watonga, Okla.,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets

its burden, the burden shifts to the non-moving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. *See Applied Genetics,* 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment. *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). Essen-

tially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505.

## II. Facts

The following facts are either uncontroverted or construed in a light most favorable to plaintiff:[1]

Penn–Plax employs more than 200 people to manufacture and sell pet products. The Goldman family—Jerry and Terry Goldman and their sons Terry and Ricky Goldman—own and manage Penn–Plax. Penn–Plax employed plaintiff for ten years, from 1990 to December 27, 1999, and in 1996, it promoted plaintiff to regional sales manager.[2] As regional sales manager, plaintiff attended trade shows, made sales calls, called on distributors and supervised employees. Ivan Fielman, national sales director, supervised plaintiff. Fielman testified that plaintiff was a meticulous and hard-working salesperson. *See* Fielman Depo. at 81 ll.8–15, 77 ll.14–19, Exhibit 1 to *Defendant's Memorandum In Support Of Its Motion For Summary Judgment ("Defendant's Memorandum")* (Doc. # 22) filed July 26, 2002.

---

1. Plaintiff's factual response does not comply with D. Kan. Rule 56.1. In opposing a summary judgment motion, Rule 56.1 requires that "[e]ach fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed." D. Kan. Rule 56.1(b)(1). Plaintiff correctly states her facts in numbered paragraphs and refers to record support, but she does not indicate which number of defendant's fact paragraph her own fact paragraph disputes. *See Plaintiff's Memorandum In Opposition To Defendant's Motion For Summary Judgment ("Plaintiff's Memorandum")* (Doc. # 29) filed September 9, 2002 at 1–8. Plaintiff generally lists which of defendant's fact paragraphs she controverts. *See id.* at 4, 9.

In addition, plaintiff does not distinguish which of her fact paragraphs controvert defendant's factual statements under D. Kan. Rule 56.1(b)(1) and which paragraphs assert additional facts under D. Kan. Rule 56.1(b)(2).

Because the factual record is relatively simple, plaintiff's failure to follow the local rule does not impose a significant burden on the Court. The Court therefore will decide defendant's motion on the merits. The Court cautions counsel, however, that future violations of D. Kan. Rule 56.1(b) may result in the Court deeming as true all material facts set forth in the movant's motion for summary judgment.

2. The record does not reflect plaintiff's position before 1996.

On the evening of December 14, 1999, plaintiff called Fielman at home to tell him that she was pregnant, but that she wanted to keep working. Plaintiff and Fielman had a sales trip planned for the week of January 10, 2000, and plaintiff suggested that during that trip, they could discuss how to handle her job duties during maternity leave. Plaintiff asked Fielman not to say anything to the Goldmans at that time. The Goldmans typically gave employee bonuses and pay raises in holiday cards which arrived a few days before Christmas. Plaintiff feared that the Goldmans would give her a lower year-end bonus and pay raise if they knew about her pregnancy. Fielman assured plaintiff that the Goldmans would be happy for her. He stated that they had treated him and his wife very well with each of their four children. The next day, December 15, 1999, Fielman told the Goldmans that plaintiff was pregnant.

The parties agree that the Goldmans directed Fielman to fire plaintiff, but they disagree when the Goldmans made that decision. Defendant contends that they made the decision *before* they learned of plaintiff's pregnancy. Fielman testified that back in October, he knew that the Goldmans were planning to fire plaintiff at the end of the year. *See* Fielman Depo. at 74 ll.12–22, 77 ll.14–19. On December 17, 1999, however, Fielman authored the following memorandum to management concerning, *inter alia*, plaintiff's employment:

Whew, tuff [sic] week! I want to first say, if I haven't already, thank you for all your help in formulating a game plan for the year 2000. Some of these decisions were bitter pills to swallow, but I do agree with the decisions. The following will be put into effect ASAP:

\* \* \* \* \* \*

Annette Gordon will be notified of her termination after the Christmas Holiday. As you know, this was not an easy decision. But based on the economics of her administering the region from where she lives, and the need for sales people based in areas that the distributors have their warehouses in, I agree with the decision. I have had many conversations with Annette, and she has told me on many occasions that she will not move. They have a 100 year old Victorian style house, a lot of land, and they are extremely happy there. The territory will be split among the existing sales people enabling more frequent visits, resulting in more personal attention and growth....

EEOC file at 71, *Volume II Exhibits To Plaintiff's Memorandum In Opposition To Defendant's Motion For Summary Judgment.*[3]

A few days before December 17, Bob Glasser, the Penn–Plax chief financial officer ("CFO"), learned that Penn–Plax planned to fire plaintiff. He learned the information in a meeting with Fielman and the Goldmans. At the time, Fielman and the Goldmans knew that plaintiff was pregnant, but they did not tell Glasser. Glasser learned of the pregnancy on December 17, when he met with Penn–Plax attorney Ron Nurmburg. Penn–Plax consulted Nurmburg because it planned to fire plaintiff while she was pregnant.[4]

---

**3.** The Equal Employment Opportunity Commission ("EEOC") concluded that a reasonable basis exists on which to conclude that Penn–Plax terminated plaintiff because of her pregnancy. *See* EEOC file at 38–40. During its investigation, the EEOC asked Penn–Plax to provide documents which established when it decided to terminate plaintiff's employment.

In response, Penn–Plax provided only the December 17 memorandum from Fielman.

**4.** When Melissa Kulesz, another Penn–Plax employee, became pregnant, Penn–Plax management discussed whether to terminate her employment. Kulesz worked as a detailer, in a lower position than plaintiff. Ultimately

At the end of December 1999, plaintiff took vacation time off work. On December 27, while she and her husband were driving to visit friends and family for Christmas, plaintiff called Fielman to get information about raises and bonuses for herself and the employees whom she supervised. In that conversation, Fielman told plaintiff that she was fired because of (1) her relatively high expenses; (2) her location, which contributed to her increased expenses; (3) a declining number of distributors in the industry; and (4) the bottom line of the company.

No one in Penn–Plax management had ever questioned plaintiff's expenses or complained to her that her expenses were too high. Indeed, shortly before he fired her, Fielman complimented plaintiff on her region's profitability. In 1999, although plaintiff had the highest individual expense to sales ratio, her region as a whole had the lowest expense to sales ratio in the company. Also, defendant never told plaintiff that she must relocate. Although plaintiff had told Fielman that she enjoyed living in Kansas, she had never refused a transfer to another location.

Before December 1999, Penn–Plax had fired only one other regional sales manager: Jim Mateo. Penn–Plax had fired Mateo in August 1999 for poor performance, including bad attitude and refusal to take on new work. At the time it terminated plaintiff's employment, Penn–Plax employed three other regional sales managers: Pasqualel (Pat) Lavacca, Mary Kinkella and Wesley Deti. Plaintiff was the only regional sales manager who had ever been pregnant.

Penn–Plax decided not to terminate Kulesz's employment.

**5.** Defendant also seeks summary judgment on plaintiff's claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–

After Penn–Plax fired plaintiff, Dan Bzdyl assumed her duties, including supervising employees and calling on some distributors, and Fielman called on distributors in plaintiff's territory. Penn–Plax raised Bzdyl's pay by almost 30 per cent to account for his additional responsibilities.

## III. Analysis

■ Plaintiff claims that defendant terminated her employment because of pregnancy. Defendant counters that it eliminated plaintiff's position for financial reasons. The burden-shifting framework which the Supreme Court set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies to plaintiff's pregnancy discrimination claim. *Atchley v. Nordam Group, Inc.,* 180 F.3d 1143, 1148 (10th Cir.1999). Under this approach, plaintiff initially bears the burden of production to establish a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. If plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a facially nondiscriminatory reason for its action. *Reynolds v. Sch. Dist. No. 1,* 69 F.3d 1523, 1533 (10th Cir.1995). If defendant articulates a legitimate nondiscriminatory reason, the burden shifts to plaintiff to present evidence from which a reasonable jury might conclude that defendant's proffered reason is pretextual, that is, "unworthy of belief." *Beaird v. Seagate Tech., Inc.,* 145 F.3d 1159, 1165 (10th Cir.1998) (quoting *Randle v. City Of Aurora,* 69 F.3d 441, 451 (10th Cir. 1995)).

■ Defendant contends that plaintiff cannot establish a prima facie case that it terminated her employment on account of her pregnancy.[5] To establish a prima fa-

54. Plaintiff asserted such claim in the *Complaint* (Doc. # 1) filed July 18, 2002, but she did not assert it in the *Pretrial Order* (Doc. # 28) filed September 4, 2002. Plaintiff has therefore abandoned any claim under the FMLA. *See* D. Kan. Rule 16.2(c) (pretrial or-

cie case in a reduction in force ("RIF") case, plaintiff must show that (1) she is within the protected group; (2) she performed satisfactory work; (3) defendant discharged her despite the adequacy of her work; and (4) the record contains evidence that defendant intended to discriminate against plaintiff in reaching its RIF decision. *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1137 (10th Cir.2000). Defendant admits that plaintiff meets the first three elements, but argues that the fourth element requires plaintiff to show that her position remained open and that defendant sought applicants with equal qualifications to fill it.[6] *See Defendant's Memorandum* at 7–8. Defendant's argument misses the mark. In *Beaird*, the Tenth Circuit Court of Appeals recognized that in a RIF case, "plaintiff cannot actually point to a continuing vacancy because her position has been eliminated." 145 F.3d at 1167. Instead, the Tenth Circuit noted that plaintiff can meet the fourth element by pointing to circumstances which show that the employer could have retained her but chose instead to retain a non-protected employee. *Id.* Here, the record shows that defendant retained three non-pregnant regional sales managers. Thus plaintiff has established a prima facie case.

■ Defendant articulates a facially nondiscriminatory reason for its action—that it eliminated plaintiff's position to save costs. Specifically, defendant states that plaintiff's expenses were too high, that her location contributed to her high expenses and that the number of distributors in the industry had declined. *See Defendant's Memorandum* at 10. Defendant also maintains that it decided to eliminate

plaintiff's position before it learned of her pregnancy.

■ In order to avoid summary judgment, plaintiff must present evidence from which a reasonable jury might conclude that defendant's proffered nondiscriminatory reasons are pretextual, that is, "unworthy of belief." *Beaird*, 145 F.3d at 1165 (quoting *Randle*, 69 F.3d at 451). Evidence of pretext may take a variety of forms. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1411 n. 10 (10th Cir.1997). Plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997) (quotations omitted). Typically, a plaintiff demonstrates pretext with evidence that (1) defendant's stated reason for the adverse action was false; (2) defendant acted contrary to written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse decision. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir.2000).

■ Construed in the light most favorable to plaintiff, the record in this case supports a finding that defendant's stated reasons for termination are false. Defendant's claim that it decided to fire plaintiff before it learned of her pregnancy depends solely on the credibility of its witnesses. Fielman's memorandum of December 17, however, suggests that defendant actually

---

der controls subsequent course of action unless modified by consent of parties and court, or by court order to prevent manifest injustice).

6. Defendant argues that plaintiff cannot make such a showing because Fielman and Bzdyl assumed her job duties and defendant did not hire another regional sales manager to take her place.

reached its decision during the week of December 17. This inference is bolstered by the fact that defendant's CFO first learned of the decision during the week of December 17. Based on this evidence, a reasonable jury could conclude that defendant decided to terminate plaintiff after it learned of her pregnancy. In addition, the jury could discredit defendant's articulated reasons regarding plaintiff's location and high expenses, based on the facts that (1) defendant never asked plaintiff to relocate and (2) plaintiff's territory was the most profitable in the company. On this record, plaintiff has established a genuine issue of fact regarding whether defendant's reasons for the termination are pretextual.

**IT IS THEREFORE ORDERED** that *Defendant's Motion For Summary Judgment* (Doc. # 21) filed July 26, 2002 be and hereby is **OVERRULED.**