Sue Ann **DOLQUIST**, Plaintiff,

v.

**HEARTLAND PRESBYTERY,
et al., Defendants.**

No. CIV.A.03–2150–KHV.

United States District Court,
D. Kansas.

Oct. 28, 2004.

Joseph M. Backer, The Backer Law Firm, LLC, Kansas City, MO, for Plaintiff.

Hillary L. Hayes, Kimberly A. Jones, Blackwell Sanders Peper Martin LLP, Michael S. Ketchmark, Davis Ketchmark & McCreight, P.C., Kansas City, MO, Patrick E. McGrath, Wallace, Saunders, Austin, Brown & Enochs, Chtd., Overland Park, KS, for Defendants.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

Sue Ann Dolquist brings suit against Heartland Presbytery and Leawood Presbyterian Church ("Leawood Presbyterian") for sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* as amended, and intentional failure to supervise in violation of state law. Plaintiff also asserts a state law claim against Leawood Presbyterian for negligent infliction of emotional distress.[1] This matter comes before the Court on *Defendant Leawood Presbyterian Church's Motion To Dismiss Or For Summary Judgment* (Doc. # 77) filed April 1, 2004. Leawood Presbyterian seeks to dismiss plaintiff's Title VII claims for lack of subject matter jurisdiction and failure to state a claim under Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P. In doing so, it invokes the so-called "ministerial exception" to Title VII. Some courts have characterized this issue as jurisdictional. *See, e.g., Alicea–Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698, 704 (7th Cir.2003); *Combs v. Central Tex. Annual Conf. of United Methodist Church*, 173 F.3d 343, 345 (5th Cir.1999). The Tenth Circuit, however, has held that the issue is more appropriately considered a challenge

---

1. Plaintiff asserted a claim for negligent infliction of emotional distress against Heartland Presbytery, but the Court granted Heartland Presbytery's motion to dismiss that claim. *See Memorandum And Order* (Doc. # 55) filed January 15, 2004. Plaintiff also asserted claims for sex discrimination, outrage and assault and battery. *See Plaintiff's Second Amended Petition For Damages* at 8–11, 19–21 attached to *Notice Of Removal* (Doc. # 1) filed March 3, 2003. Plaintiff abandoned those claims by omitting them from the pretrial order. *See Pretrial Order* (Doc. # 86) at 12–16. *See* D. Kan. Rule 16.2(c) (pretrial order controls subsequent course of action unless modified by consent of parties and court, or by court order to prevent manifest injustice); *Gordon–Howell v. Penn–Plax, Inc.*, 232 F.Supp.2d 1251, 1256 n. 5 (D.Kan.2002). Plaintiff originally sued John Miller, but she later agreed to dismiss her claims against him. *See Voluntary Dismissal With Prejudice Of Claim Against Defendant John Miller* (Doc. # 21) filed July 1, 2003.

to the sufficiency of plaintiff's claims under Rule 12(b)(6). *See Bryce v. Episcopal Church in Diocese of Colo.*, 289 F.3d 648, 654 (10th Cir.2002); *see also Bollard v. Calif. Province of Soc. of Jesus*, 196 F.3d 940, 951 (9th Cir.1999) (non-frivolous assertion of federal claim suffices to establish federal question jurisdiction even if claim is later dismissed on merits under Rule 12(b)(6)). The Court therefore considers defendant's motion as a challenge to the sufficiency of plaintiff's claims, and not a jurisdictional challenge.[2]

■ As an alternative to dismissal, Leawood Presbyterian seeks summary judgment under Rule 56, arguing that it is entitled to judgment as a matter of law under the "ministerial exception" to Title VII. In support of its request, Leawood Presbyterian cites only the parties' stipulations that plaintiff is an ordained minister and that from June 5, 1995 to October 7, 2001, she worked as pastor for Leawood Presbyterian. *See Defendant Leawood Presbyterian Church's Brief In Support Of Its Motion To Dismiss Or For Summary Judgment* (Doc. # 78) filed April 1, 2004 at 1. These naked facts do not create a sufficient record for purposes of summary judgment.[3] *See* Rule 56(c), Fed.R.Civ.P. Therefore the Court considers defendant's motion solely under Rule 12(b)(6) and, for reasons stated below, overrules the motion.

## I. Legal Standards

■ In ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well pleaded facts in the amended complaint and views them in a light most favorable to plaintiff. *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The Court makes all reasonable inferences in favor of plaintiff, and liberally construes the pleadings. Rule 8(a), Fed.R.Civ.P.; *Lafoy v. HMO Colo.*, 988 F.2d 97, 98 (10th Cir.1993). The Court may not dismiss a cause of action for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts which would entitle her to relief. *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kan.*, 927 F.2d 1111, 1115 (10th Cir.1991). Although plaintiff need not precisely state each element of her claims, she must plead minimal factual allegations on material elements that must be proved. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). Defendant bears the burden to show that plaintiff cannot prove any set of facts which would entitle her to relief. *See, e.g., Gould Elec., Inc. v. United States*, 220 F.3d 169, 178 (3d Cir.2000); *Beck v. Deloitte & Touche*, 144 F.3d 732, 735–36 (11th Cir.1998); *Schrag v. Dinges*, 788 F.Supp. 1543, 1552 (D.Kan. 1992).

## II. Facts

Plaintiff alleges the following facts:

---

**2.** Because defendant has already filed an answer, its motion should normally be made under Rule 12(c), for judgment on the pleadings. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n. 2 (10th Cir.2002). The same standard applies for both 12(b)(6) and 12(c) motions, however, so in keeping with defendant's designation, the Court refers to the motion as a 12(b)(6) motion to dismiss. *See id.*

**3.** On August 25, 2004, Leawood Presbyterian filed a supplemental brief which contains additional fact assertions. *See Leawood Presbyterian Church's Supplemental Briefing In Support Of Its Motion To Dismiss Or For Summary Judgment Based Upon The Ministerial Exception* (Doc. # 125) at 5, 8. The Court does not consider such facts. *See, e.g., Oleson v. Kmart Corp.*, 189 F.R.D. 636, 637 (D.Kan.1999) (unfair to non-movant for court to consider facts which appear for first time in reply brief); D. Kan. Rule 56.1.

From June 5, 1995 to October 7, 2001, plaintiff served as pastor for Leawood Presbyterian. *Pretrial Order* (Doc. # 86) filed April 12, 2004 at 5.[4] During this time, John Miller was choir director and/or elder at Leawood Presbyterian. *Id.* at 6. Miller sexually harassed plaintiff. He repeatedly made offensive, inappropriate comments of a sexual nature, and engaged in inappropriate conduct of a sexual nature including kissing and touching plaintiff in an offensive manner. *Id.* Miller's conduct was unwelcome, hostile and abusive and affected the terms and conditions of plaintiff's employment. *Id.* Plaintiff complained about Miller's behavior, but Leawood Presbyterian did not investigate her claims or take remedial action. *Id.*

After plaintiff complained, her supervisors unfairly criticized and disciplined her. Specifically, Leawood Presbyterian retaliated by (1) threatening to terminate her employment; (2) threatening her with disparity in the terms and conditions of her employment; (3) creating a hostile work environment; (4) falsely accusing her of engaging in sexually inappropriate behavior such as wearing see-through clothing and short skirts; (5) attempting to force her to consent to rehire Miller; (6) falsely accusing her of being involved in an inappropriate relationship with a church member; (7) organizing the investigation in such a way as to cause animosity between plaintiff and female coworkers; (8) fabricating complaints about plaintiff's ability to provide meaningful sermons; (9) fabricat-

ing complaints about plaintiff's job performance; (10) suggesting that plaintiff take courses on pastoral care; and (11) demanding that plaintiff return her severance pay to fund counseling for Miller. *Id.* at 7. Plaintiff found her work environment so intolerable that she did not return to work after October 7, 2001.

## III. Analysis

Plaintiff asserts four claims against Leawood Presbyterian: sexual harassment and retaliation under Title VII and intentional failure to supervise and negligent infliction of emotional distress under state law.[5] Leawood Presbyterian seeks to dismiss the Title VII claims, arguing that because plaintiff is a church minister, a so-called "ministerial exception" precludes liability.

Title VII does not contain a specific exception for discrimination claims by ministers.[6] Despite the lack of a statutory exemption, courts have found that the First Amendment precludes liability for certain employment discrimination claims brought by ministers against the churches which employ them. The First Amendment provides as follows:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . .

United States Const., Amend. I. Under the Free Exercise Clause, government action may unconstitutionally burden the

---

**4.** Plaintiff actually alleges that in that capacity, she worked for both Leawood Presbyterian and Heartland Presbytery. *Id.* For purposes of this motion, the Court considers only plaintiff's claims against Leawood Presbyterian.

**5.** Plaintiff seeks back pay, front pay, compensatory damages and punitive damages.

**6.** Section 702 expressly allows religious institutions to make employment decisions based on religious preference. 42 U.S.C. §§ 2000e–

1(a); *see Corp. of Presiding Bishop of Church of Jesus Christ of Latter–Day Saints v. Amos*, 483 U.S. 327, 338–39, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987) (Section 702 does not violate Establishment Clause). With respect to issues of race, sex and national origin, however, the text of Title VII treats an employment dispute between a minister and his or her church like any other employment dispute. *See, e.g., Bollard*, 196 F.3d at 945; *Rayburn v. Gen. Conf. of Seventh–Day Adventists*, 772 F.2d 1164, 1166 (4th Cir.1985).

free exercise of religion in two ways: (1) by interfering with an individual's ability to observe the commands or practices of his or her faith, *see, e.g., Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531–33, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993); and (2) by encroaching on the ability of a church to manage its internal affairs. *See, e.g., Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.,* 344 U.S. 94, 116, 73 S.Ct. 143, 97 L.Ed. 120 (1952). In the latter regard, the Free Exercise Clause protects the power of religious organizations "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Id.* This power includes the freedom to select clergy free from government interference. *See EEOC v. Catholic Univ. of Am.,* 83 F.3d 455, 460 (C.A.D.C.1996) (citing *Gonzalez v. Roman Catholic Archbishop of Manila,* 280 U.S. 1, 16, 50 S.Ct. 5, 74 L.Ed. 131 (1929) (church function is to determine essential qualifications of chaplain and whether candidate possesses them); *Serbian Eastern Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 717, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976) (questions of church discipline and composition of church hierarchy are at core of ecclesiastical concern)).

The Establishment Clause protects the separation of church and state and prevents the government from passing laws that "aid one religion, aid all religions, or prefer one religion over the other." *School Dist. of Abington Township, Pa. v. Schempp,* 374 U.S. 203, 216, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963). In *Lemon v. Kurtzman,* 403 U.S. 602, 612, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the Supreme Court articulated a three-part test to determine whether a neutral law violates the Establishment Clause: (1) whether the statute has a secular legislative purpose; (2) whether the principal or primary effect of the statute neither advances nor inhibits religion; and (3) whether the statute fosters "an excessive government entanglement with religion." *Id.* at 612–13, 91 S.Ct. 2105 (citation omitted). Title VII satisfies the first two prongs: it has a secular purpose and it does not have the principal or primary effect of advancing or inhibiting religion. *See Rayburn,* 772 F.2d at 1170 n. 6. Thus the only issue under the Establishment Clause is whether applying Title VII to plaintiff's claims would foster excessive entanglement with religion.

## A. Cases Which Have Found That The First Amendment Precludes Employment Claims By Ministers

In *Bryce v. Episcopal Church in the Diocese of Colo.,* 289 F.3d 648 (10th Cir. 2002), the Tenth Circuit acknowledged in dicta that "courts have recognized a ministerial exception that prevents adjudication of Title VII employment discrimination cases brought by ministers against churches." *Id.* at 656 (citing *Catholic Univ. of Am.,* 83 F.3d 455 and *McClure v. Salvation Army,* 460 F.2d 553 (5th Cir. 1972)). In so doing, the Tenth Circuit stated as follows:

> [t]he right to choose ministers is an important part of internal church governance and can be essential to the well-being of a church, "for perpetuation of a church's existence may depend upon those whom it selects to preach its values, teach its message, and interpret its doctrines both to its own membership and to the world at large."

*Bryce,* 289 F.3d at 656 (quoting *Rayburn,* 772 F.2d at 1168).

In *Bryce,* a church youth minister and her partner sued the church and various church members regarding statements made at church meetings about the couple's homosexual relationship and civil commitment ceremony. Both plaintiffs asserted claims under 42 U.S.C. §§ 1985(3) and 1986, for conspiracy to deprive them of

civil rights and failure to prevent such conspiracy. In addition, the youth minister asserted a Title VII claim for sexual harassment. Based on the First Amendment, the district court granted summary judgment in favor of defendants on all claims. The Tenth Circuit affirmed, finding that because the alleged misconduct occurred in the context of an internal ecclesiastical dispute which was "rooted in religious belief," the First Amendment precluded the claims of both plaintiffs. Because the church autonomy doctrine applied,[7] the Tenth Circuit did not decide whether the so-called "ministerial exception" would preclude the youth minister's Title VII claims. *See id.* at 658 n. 2.

Although the Tenth Circuit has not addressed the issue, the First, Fourth, Fifth, Seventh, Eighth, Ninth, Eleventh and District of Columbia Circuits have found that the First Amendment protects churches from various employment claims by ministers.[8] *See Natal v. Christian & Missionary Alliance,* 878 F.2d 1575 (1st Cir.1989) (affirming 12(b)(6) dismissal of wrongful termination claim); *EEOC v. Roman Catholic Diocese of Raleigh, N.C.,* 213 F.3d 795 (4th Cir.2000) (affirming 12(b)(1) dismissal of sex discrimination and retaliation claims regarding reassignment of duties and failure to re-hire); *Rayburn,* 772 F.2d at 1166 (4th Cir.) (affirming summary judgment for defendants on discriminatory denial of pastorship claim); *Starkman v. Evans,* 198 F.3d 173 (5th Cir.1999) (affirming summary judgment for defendant on failure to accommodate disability and retaliatory discharge claims); *Combs,* 173 F.3d 343 (5th Cir.1999) (affirming summary judgment for defendant on discriminatory pay, benefits and termination claims); *McClure,* 460 F.2d 553 (5th Cir.1972) (affirming 12(b)(1)

dismissal of discriminatory and retaliatory salary, benefits and discharge claims); *Alicea–Hernandez,* 320 F.3d 698 (7th Cir. 2003) (affirming 12(b)(1) dismissal of discriminatory office assignment, exclusion from meetings, denial of resources and constructive discharge claims); *Young v. N. Ill. Conf. of United Methodist Church,* 21 F.3d 184 (7th Cir.1994) (affirming 12(b)(1) dismissal of discriminatory failure to promote and retaliatory discharge claims); *Scharon v. St. Luke's Episcopal Presbyterian Hosps.,* 929 F.2d 360 (8th Cir.1991) (affirming summary judgment for defendant on discriminatory discharge claim); *Werft v. Desert S.W. Annual Conf. of United Methodist Church,* 377 F.3d 1099 (9th Cir.2004) (affirming 12(b)(6) dismissal of failure to accommodate disability and constructive discharge claims); *Gellington v. Christian Methodist Episcopal Church, Inc.,* 203 F.3d 1299 (11th Cir.2000) (affirming summary judgment in favor of defendant on retaliatory reassignment and constructive discharge claims); *Catholic Univ. of Am.,* 83 F.3d 455 (D.C.Cir.1996) (affirming post-trial dismissal of Title VII claim for discriminatory and retaliatory denial of tenure); *Minker v. Baltimore Annual Conf. of United Methodist Church,* 894 F.2d 1354 (D.C.Cir.1990); (affirming 12(b)(6) dismissal of age discrimination and breach of contract claims based on unequal pay and benefits and denial of pastorship).

Generally, these courts have reasoned that because the selection of ministers is an essential element of church administration, government and ecclesiastical concern, the First Amendment precludes them from inquiring into the reasons behind church employment decisions which relate to the selection of ministers. *See, e.g., Catholic Univ. of Am.,* 83 F.3d at 461–

---

**7.** The church autonomy doctrine prohibits civil court review of internal church disputes involving matters of faith, doctrine, church governance and polity. *Id.* at 655.

**8.** The Second, Third, Sixth and Tenth Circuits apparently have not addressed the issue.

64 (Free Exercise Clause guarantees church freedom to decide to whom it will trust ministerial responsibilities; reasons for decision need not be ecclesiastical in nature, only related to pastoral appointment decision); *Scharon*, 929 F.2d at 363 (personnel decisions affecting clergy are *per se* religious matters and cannot be reviewed by courts); *Minker*, 894 F.2d at 1356–57 (determination of whose voice speaks for church is *per se* religious matter, court need not find that reasons for decision are independently ecclesiastical in nature); *Rayburn*, 772 F.2d at 1167–69 (court may not inquire into church reasons for decision; Free Exercise Clause protects act of decision rather than motivation behind it). The courts have applied this reasoning not only to ministers, but to other church employees who performed religious or spiritual functions. *See Alicea–Hernandez*, 320 F.3d at 704 (communications director); *Diocese of Raleigh, N.C.*, 213 F.3d at 801–04 (music director); *Starkman*, 198 F.3d at 175–76 (choir director); *Catholic Univ. of Am.*, 83 F.3d at 465 (cannon law faculty).

In addition to ministerial hiring and firing decisions, the courts have found that the First Amendment protects a church's right to make employment decisions regarding a minister's pay, benefits, duty assignment, tenure, promotion, disability accommodation and job resources. *See, e.g., Werft*, 377 F.3d 1099 (failure to accommodate disability); *Alicea–Hernandez*, 320 F.3d at 703 (office assignment, exclusion from meetings and denial of resources); *Diocese of Raleigh, N.C.*, 213 F.3d 795 (reassignment of duties); *Starkman*, 198 F.3d 173 (5th Cir.1999) (failure to accom-

modate disability); *Combs*, 173 F.3d 343 (pay, benefits and termination); *Young*, 21 F.3d 184 (failure to promote); *McClure*, 460 F.2d 553 (pay, benefits and termination). In so doing, the courts have reasoned that such decisions relate to a church's freedom to select its ministers free from government interference under the First Amendment. The Fifth Circuit explained this reasoning as follows:

> The relationship between an organized church and its ministers is its lifeblood. The minister is the chief instrument by which the church seeks to fulfill its purpose. Matters touching this relationship must necessarily be recognized as of prime ecclesiastical concern. Just as the initial function of selecting a minister is a matter of church administration and government, so are the functions which accompany such a selection. It is unavoidably true that these include the determination of a minister's salary, his place of assignment, and the duty he is to perform in furtherance of the religious mission of the church.

*McClure*, 460 F.2d at 558–59. The courts have therefore concluded that the First Amendment precludes ministers from challenging employment decisions which relate to their qualifications to serve in ministerial positions.[9]

**B. Whether The First Amendment Precludes Plaintiff From Stating Claims For Sexual Harassment**

Leawood Presbyterian argues that the "ministerial exception" cases demonstrate that the First Amendment precludes plaintiff from stating claims for sexual harassment. None of those cases, however, in-

---

**9.** These courts have primarily relied on the Free Exercise Clause, although some have also relied on the Establishment Clause. *See, e.g., Gellington*, 203 F.3d at 1303–04 (applying Title VII would violate Establishment Clause); *Catholic Univ. of Am.*, 83 F.3d at 465–66 (delving into defendant's reasons for

denial of tenure would involve excessive government entanglement with religion); *Scharon*, 929 F.2d at 362 (applying Title VI would require excessive entanglement with religion); *Rayburn*, 772 F.2d at 1170 (allowing plaintiff's claims would cause excessive substantive and procedural entanglement with religion).

volved sexual harassment. Of the federal circuit courts, only the Ninth Circuit has addressed whether the First Amendment precludes a minister from suing a church for sexual harassment. *See Elvig v. Calvin Presbyterian Church,* 375 F.3d 951 (9th Cir.2004); *Bollard,* 196 F.3d 940. In both cases, the Ninth Circuit found that plaintiffs had stated claims which were sufficient to overcome defendants' motions to dismiss.[10]

In *Elvig,* an associate pastor claimed that her supervising pastor had sexually harassed her and that after she complained, the church did not stop the harassment and retaliated against her by removing certain duties, verbally abusing and intimidating her, suspending and terminating her employment and foreclosing pastoral employment opportunities in other Presbyterian churches. The district court dismissed plaintiff's claims under Rule 12(b)(6), based on the First Amendment. The Ninth Circuit reversed in part. It found that to the extent plaintiff's claims related to the church's choice of a minister, *i.e.* the removal of duties, suspension, termination and preventing other pastoral employment, the First Amendment precluded the claims. 375 F.3d at 958–61. With respect to the sexual and retaliatory

harassment claims, however, the Ninth Circuit found that plaintiff had stated claims on which relief could be granted. It noted that the alleged harassment did not involve an employment decision by the church relating to its choice of a minister, and that defendant did not assert a religious justification for its conduct. *Id.* at 962–65. It therefore concluded that plaintiff could recover compensatory damages for the sexual and retaliatory harassment, but not lost wages resulting from the church's decision to suspend or terminate her employment. *Id.* at 966–67. In so concluding, the Ninth Circuit relied heavily on its prior decision in *Bollard. See id.* at 955–59.[11]

In *Bollard,* plaintiff claimed that his superiors had sexually harassed him while he was training to become a priest and that the harassment was so severe that he had to leave the Jesuit order before taking his vows.[12] The district court dismissed plaintiff's Title VII suit for lack of subject matter jurisdiction, under the First Amendment. The Ninth Circuit reversed, finding no First Amendment bar to plaintiff's claims. *See Bollard,* 196 F.3d at 944–45.[13] Specifically, it found that the rationale which supports protection under the Free Exercise Clause—allowing a church

---

10. The Court's research revealed only one federal district court which has addressed this issue, and that court is located in the Ninth Circuit. *See Himaka v. Buddhist Churches of Am.,* 919 F.Supp. 332, 333 (N.D.Cal.1995) (noting that it had previously overruled motion to dismiss based on First Amendment); *see also Kraft v. Rector,* No. 01–7871, 2004 WL 540327, at *5 (S.D.N.Y. March 17, 2004) (dismissing priest's breach of contract and wrongful discharge claims under 12(b)(1), but stating in dicta that Free Exercise Clause does not bar court from deciding every dispute that might arise in context of church-minister employment contract) (citing *Bollard,* 196 F.3d at 947).

11. A divided panel of three judges decided *Elvig.* One judge dissented, stating that the

First Amendment precluded the court from inquiring whether the church had exercised reasonable care in taking steps to correct and prevent the alleged harassment. *See id.* at 973.

12. Although plaintiff was only a novice, the Ninth Circuit analyzed plaintiff's claims as if he were a minister and an employee for Title VII purposes. *See, e.g., Bollard,* 196 F.3d at 947 (observing that "a minister is the target ... of the harassing activity" and referring to the "church-minister" employment relationship). The court did not explain the bases for its assumptions.

13. The Ninth Circuit noted that the district court should have evaluated the motion to dismiss under Rule 12(b)(6), not 12(b)(1). *See id.* at 951.

to choose its representatives using whatever criteria it deems relevant—did not apply to plaintiff's sexual harassment claims. *Id.* at 947. In this regard, the Ninth Circuit noted that the only relevant decision by defendants was the alleged decision not to intervene and prevent the alleged harassment. *Id.* As to that decision, the court stated that "it strays too far from the rationale of the Free Exercise Clause to extend constitutional protection to this sort of disciplinary inaction simply because a minister is the target as well as the agent of the harassing activity." *Id.* It further stated as follows:

> The Free Exercise Clause rationale for protecting a church's personnel decisions concerning its ministers is the necessity of allowing the church to choose its representatives using whatever criteria it deems relevant. That rationale does not apply here, for the Jesuits most certainly do not claim that allowing harassment to continue unrectified is a method of choosing their clergy. Because there is no protected-choice rationale at issue, we intrude no further on church autonomy in allowing this case to proceed than we do, for example, in allowing parishioners' civil suits against a church for the negligent supervision of ministers who have subjected them to inappropriate sexual behavior.

*Id.* at 947–48 (citations omitted). Because plaintiff's claims did not involve a decision relating to choice of clergy, the court concluded that the Free Exercise Clause did not preclude them.

The Ninth Circuit also found that the Establishment Clause did not bar plaintiff's claims. On a substantive level, it found that impermissible entanglement would exist if plaintiff's claims involved church freedom to choose its ministers. *Id.* at 948–49. Plaintiff's claims did not do

so. It noted that excessive procedural entanglement is most probable where a substantive entanglement is present. *Id.* at 949. Where substantive entanglement is absent, however, it found that "procedural entanglement considerations are reduced to the constitutional propriety of subjecting a church to the expense and indignity of the civil legal process." *Id.* The Ninth Circuit concluded that procedurally, plaintiff's claims would result in no greater entanglement than any other civil suit which a private litigant might pursue against a church. *Id.* at 950. In so holding, the Ninth Circuit stated as follows:

> The issue in the case is whether Bollard was subjected to sex-based harassment by his superiors that was sufficiently severe or pervasive as to be actionable under Title VII. *See Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2264, 2270, 141 L.Ed.2d 633 (1998). The Jesuit order may assert as an affirmative defense that it exercised reasonable care to prevent and correct the harassment, and that Bollard failed to take advantage of these opportunities to avoid or limit harm. *Id.* at 2270. This is a restricted inquiry. Nothing in the character of this defense will require a jury to evaluate religious doctrine or the "reasonableness" of the religious practices followed within the Jesuit order. Instead, the jury must make secular judgments about the nature and severity of the harassment and what measures, if any, were taken by the Jesuits to prevent or correct it. The limited nature of the inquiry, combined with the ability of the district court to control discovery, can prevent a wide-ranging intrusion into sensitive religious matters.

*Id.* It therefore found that the Establishment Clause did not preclude plaintiff's claims. *Id.*[14]

---

**14.** The Ninth Circuit denied defendants' petition for rehearing en banc. *See Bollard v.*

In addition to the Ninth Circuit, two state courts have held that the First Amendment does not preclude ministers from suing for sexual harassment. *See McKelvey v. Pierce*, 173 N.J. 26, 800 A.2d 840 (2002); *Black v. Snyder*, 471 N.W.2d 715 (Minn.Ct.App.1991).[15] Like *Bollard*, plaintiff in *McKelvey* was a priesthood candidate who alleged that his superiors sexually harassed him and that the harassment was so severe that he had to drop out of training before ordination. Plaintiff missed the time deadlines to file suit under Title VII, *see McKelvey*, 800 A.2d at 858, but he brought state law claims for breach of implied contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, intentional infliction of emotional distress and fraud and deceit. *See id.* at 844. Based on the First Amendment, the trial court dismissed the claims. A New Jersey intermediate court affirmed, but the New Jersey Supreme Court reversed, finding that plaintiff's status as a minister did not automatically bar his claims under the First Amendment. Rather, it analyzed the elements of plaintiff's claims and found that they were analogous to a sexual harassment claim under Title VII. *See id.* at 858. In this regard, the court noted that if plaintiff had filed a timely complaint under Title VII, "the case could have proceeded without any First Amendment problems." *Id.* (citing *Bollard*, 196 F.3d at 944). The New Jersey Supreme Court concluded that the issues in plaintiff's state law claims were the same as those which would support a Title VII sexual harassment claim—*i.e.* whether defendants sexually harassed plaintiff and caused him to leave the seminary before ordination—and that consideration of the claims would not offend First Amendment principles. *Id.* at 858.

In *Black*, an associate pastor sued her church for sexual harassment and retaliation. Specifically, plaintiff claimed that the church had failed to stop her supervisor from sexually harassing her and fired her in retaliation for complaints about the harassment. The trial court dismissed plaintiff's claims for lack of subject matter jurisdiction and failure to state a claim, based on the Free Exercise and Establishment Clauses. The Minnesota Court of Appeals affirmed as to the retaliation claim, finding that to inquire into church reasons for terminating plaintiff would cause excessive entanglement with religion, in violation of the Establishment Clause. *See Black*, 471 N.W.2d at 720.[16]

*Calif., Province of Soc. of Jesus*, 211 F.3d 1331 (9th Cir.2000). Three circuit judges dissented, stating that the panel decision was "flawed" and that deciding plaintiff's claims would require "the judicial branch to delve into religious matters outside the judiciary's province, such as conditions of his association with the Jesuits; disciplinary and supervisory decisions they made; whether Bollard would have otherwise been ordained into priesthood; and the extent to which he would be made whole from a loss of life of spiritual service or the proper compensation for the emotional pain one suffers from this deprivation." *Id.* at 1331–32 (internal quotations and citations omitted).

**15.** The Court's research reveals no other state court decision on point. The Colorado Supreme Court has stated in dicta that it might allow a minister's sexual harassment claim to proceed. *See Van Osdol v. Vogt*, 908 P.2d 1122, 1129 n. 11 (Colo.1996) (en banc) (affirming 12(b)(1) dismissal of Title VII retaliatory discharge claim based on First Amendment, stating in dicta that claim might have survived if plaintiff had brought hostile work environment claim instead of claims directly related to church hiring decision). In addition, in a somewhat analogous case, the Missouri Court of Appeals found that the First Amendment did not preclude a minister from suing for intentional failure to supervise clergy and intentional infliction of emotional distress based on sexual misconduct by another clergy member. *See Weaver v. African Methodist Episcopal Church*, 54 S.W.3d 575, 580–81 (Mo.Ct.App.2001).

**16.** The court found that in light of *Employment Div., Dep't of Human Res. of Or. v.*

As to the sexual harassment claim, the Minnesota Court of Appeals reversed. Noting that no court had extended First Amendment protection to sexual harassment claims, it found that plaintiff's sexual harassment claim was unrelated to issues of pastoral qualifications or church doctrine. *See id.* at 721. The court further found that allowing plaintiff's sexual harassment claim to proceed would present no greater conflict with church. disciplinary authority than that presented in cases enforcing child abuse laws. *Id.* It therefore concluded that allowing the sexual harassment claim would not involve excessive entanglement with religion.

■ Based on *Elvig, Bollard, McKelvey* and *Black,* the Court finds that the First Amendment does not preclude plaintiff from stating a claim for sexual harassment. In ruling on defendant's motion to dismiss, the Court accepts plaintiff's allegations and construes them in a light most favorable to plaintiff. *See Lafoy,* 988 F.2d at 98. Construing these allegations in the light most favorable to plaintiff, the disputed issues will likely involve the nature and severity of the alleged harassment, whether defendant knew of the harassment and whether defendant adequately responded to such notice. *See Ammon v. Baron Auto. Group,* 270 F.Supp.2d 1293, 1306–09 (D.Kan.2003) (discussing prima facie elements of sexual harassment claim). Such issues, on their face, do not involve defendant's right to select clergy or decide matters of church government, faith and doctrine. *See Bollard,* 196 F.3d at 947 (sexual harassment claims did not infringe upon church's Free Exercise right to choose representatives); *Black,* 471 N.W.2d at

721 (sexual harassment claim unrelated to pastoral qualifications or church doctrine). Defendant has not conclusively shown that plaintiff's sexual harassment claim violates the Free Exercise Clause. Likewise, under the Establishment Clause, it appears that allowing the claims will result in no greater entanglement in church affairs than other cases which allow parishioners to sue a church for the negligent supervision of ministers who have subjected them to inappropriate sexual behavior, *see Bollard,* 196 F.3d at 947–50; *Black,* 471 N.W.2d at 721, or allow non-minister employees to sue for sexual harassment. *See, e.g., Smith v. Raleigh District of N.C. Conf. of United Methodist,* 63 F.Supp.2d 694, 710–18 (E.D.N.C.1999) (First Amendment does not preclude sexual harassment claims by non-minister employees); *see also Malicki v. Doe,* 814 So.2d 347, 360–65 (Fla.2002) (First Amendment cannot be used at initial pleading stage to bar claims based on church failure to prevent priest's sexual assault on parishioner). The Court therefore overrules the motion to dismiss plaintiff's sexual harassment claim.

## C. Whether The First Amendment Precludes Plaintiff From Stating Claims For Retaliation

Plaintiff claims that after she complained about the harassment, defendant retaliated by (1) threatening to terminate her employment; (2) threatening her with disparity in the terms and conditions of her employment; (3) creating a hostile work environment; (4) falsely accusing her of engaging in sexually inappropriate behavior including wearing see-through

---

*Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), plaintiff's claims did not violate the Free Exercise Clause. *See Black,* 471 N.W.2d at 719. The Tenth Circuit, along with several other circuit courts, has rejected this line of reasoning. *See Bryce,* 289 F.3d at 656 (agreeing with other circuit courts that

"ministerial exception" analysis under Free Exercise Clause cases survives *Smith* ) (citing *Roman Catholic Diocese,* 213 F.3d at 800; *Gellington,* 203 F.3d at 1302–04; *Combs,* 173 F.3d at 348–50; *Catholic Univ.,* 83 F.3d at 461–63).

clothing and short skirts; (5) attempting to force her to consent to the rehiring of Miller; (6) falsely accusing her of being involved in an inappropriate relationship with a male member of the church; (7) organizing the investigation in a way to cause animosity between plaintiff and her female coworkers; (8) fabricating complaints about her ability to provide meaningful sermons; (9) fabricating complaints about her job performance; (10) suggesting that plaintiff take courses on pastoral care; and (11) demanding that plaintiff return her severance pay to fund counseling for Miller.

 The Court questions whether much of the alleged conduct constitutes adverse employment action. *See Sanchez v. Denver Pub. Schools,* 164 F.3d 527, 533 (10th Cir.1998) (oral reprimands and derogatory comments not adverse employment action absent evidence of impact on employment status). It is difficult to see how unrealized "threats" (to terminate plaintiff's employment or suffer disparate terms and conditions of employment), "attempts" (to force plaintiff to consent to Miller's rehiring), "suggestions" (that plaintiff take courses on pastoral care) and "demands" (that plaintiff refund her severance pay to fund counseling for Miller) might constitute actionable retaliation under Title VII. On the other hand, the Tenth Circuit has recognized that "retaliatory harassment, if sufficiently severe, may constitute 'adverse employment action' for purposes of a retaliation claim." *Gunnell v. Utah Valley State Coll.,* 152 F.3d 1253, 1264 (10th Cir.1998).

 Viewing the facts in a light most favorable to plaintiff and making all reasonable inferences in favor of plaintiff, *see Zinermon,* 494 U.S. at 118, 110 S.Ct. 975; *Lafoy,* 988 F.2d at 98, plaintiff alleges a claim for retaliatory harassment. Depending on how the evidence unfolds, some of the alleged retaliatory actions—particular-

ly that defendant falsely accused her of engaging in sexually inappropriate behavior; falsely accused her of being involved in an inappropriate relationship with a male member of the church; organized the investigation in a way to cause animosity between plaintiff and her female coworkers; fabricated complaints about her ability to provide meaningful sermons; and fabricated complaints about her job performance—may involve issues regarding plaintiff's qualifications and suitability to serve as minister. On this record, however, the Court cannot conclude that the First Amendment precludes plaintiff from stating a claim for retaliatory harassment. *See Elvig,* 375 F.3d at 962–65 (First Amendment did not preclude plaintiff from stating a claim for retaliatory harassment).

The District of Columbia Circuit decision in *Minker* is instructive. In that case, the court found that the First Amendment did not preclude plaintiff from stating a claim for breach of oral contract. Plaintiff asserted that in exchange for his continued work, the church orally agreed to provide a congregation more suited to his training and skills. The District of Columbia Circuit noted that the alleged contract threatened "to touch the core of the rights protected by the free exercise clause" and that any inquiry into church reasons for asserting that plaintiff was not suited for a particular pastorship would constitute an excessive entanglement in church affairs. *See Minker,* 894 F.2d at 1360. The court nevertheless remanded the claim for further proceedings, noting that to survive a motion to dismiss, plaintiff "need only show that *some* form of inquiry is permissible and *some* form of remedy is available." *Id.* (emphasis in original). Assuming plaintiff's allegations were true, the court held that defendant had not shown that plaintiff could prove no set of facts to prove his claims. In so holding, the court stated as follows:

We find that [plaintiff] should be allowed to demonstrate that he can prove his case without resorting to impermissible avenues of discovery or remedies. * * *

It could turn out that in attempting to prove his case, [plaintiff] will be forced to inquire into matters of ecclesiastical policy even as to his contract claim. Of course, in that situation, a court may grant summary judgment on the ground that [plaintiff] has not proved his case and pursuing the matter further would create an excessive entanglement with religion. On the other hand, it may turn out that the potentially mischievous aspects of [plaintiff's] claim are not contested by the Church or are subject to entirely neutral methods of proof. The speculative nature of our discussion here demonstrates why it is premature to foreclose [plaintiff's] contract claim. Once evidence is offered, the district court will be in a position to control the case so as to protect against any impermissible entanglements.

*Id.* at 1360–61.

 This reasoning applies here. To the extent plaintiff can demonstrate that defendant engaged in retaliatory harassment that did not involve an employment decision relating to its choice of a minister, and so long as defendant does not assert a religious justification for the alleged harassment, the First Amendment does not preclude her claims. *See Elvig,* 375 F.3d at 962–65. To survive a motion to dismiss, plaintiff "need only show that *some* form of inquiry is permissible and *some* form of remedy is available." *Id.* at 1360 (emphasis in original). Viewing facts in a light most favorable to plaintiff, defendant has not shown that plaintiff cannot prevail on her retaliatory harassment claim without violating the First Amendment. After the parties have offered evidence regarding the claims, it might turn out that plaintiff cannot prevail on some or all of her retaliation claims without doing so. At this juncture, however, the nature of the evidence is speculative. Defendant has not shown that as a matter of law, the First Amendment precludes plaintiff from stating claims for retaliation.

**IT IS THEREFORE ORDERED** that *Defendant Leawood Presbyterian Church's Motion To Dismiss Or For Summary Judgment* (Doc. # 77) filed April 1, 2004 be and hereby is **OVERRULED.**