# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-2280

GLORIA ALICEA-HERNANDEZ,

*Plaintiff-Appellant,*

v.

THE CATHOLIC BISHOP OF CHICAGO, a corporation sole,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 8374—**David H. Coar**, *Judge.*

ARGUED DECEMBER 12, 2002—DECIDED FEBRUARY 21, 2003

Before FLAUM, *Chief Judge*, and MANION and ROVNER, *Circuit Judges*.

FLAUM, *Chief Judge*. Gloria Alicea-Hernandez, an Hispanic female, claims that her former employer, the Catholic Bishop of Chicago ("the Church"), discriminated against her based on her national origin and gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. The Church argued to the district court that the religious clauses of the First Amendment preclude federal subject matter jurisdiction over these claims because both the nature of the claims and Alicea-Hernandez's unique responsibilities at the Church would

require the court to engage in excessive entanglement in matters of Church policy. The district court accepted these arguments and dismissed the suit pursuant to Fed. R. Civ. P. 12(b)(1). Alicea-Hernandez appeals. Although we disagree with the district court's analysis regarding the characterization of her claims, we affirm based on the position Alicea-Hernandez held with the Church.

## I.  Background

In March 2000 Alicea-Hernandez was hired by the Archdiocese of Chicago to fill the post of Hispanic Communications Manager. Her duties included: composing media releases for the Hispanic community; composing correspondence for the Cardinal; developing a working relationship with the Hispanic media and parishes in the Hispanic community to promote Church activities; developing a working relationship with the Hispanic community to enhance community involvement; composing articles for Church publications; and translating Church materials into Spanish. Alicea-Hernandez continued in her employment with the Church until December of that year, when she resigned.

Alicea-Hernandez claims that while working for the Church she was discriminated against on the basis of her gender and national origin as well as retaliated against for filing an Equal Employment Opportunity Commission charge. She bases these claims on allegations of poor office conditions, the Church's attempts to prevent her from rectifying those conditions, exclusion from management meetings and communications, denial of resources necessary for her to perform her job, and constructive discharge and subsequent replacement by a less qualified male who received a higher salary and a more significant title for the same position.

While all this discrimination was allegedly occurring, Alicea-Hernandez was actively taking issue with the Church on its relations with the Hispanic community. In various emails and memoranda Alicea-Hernandez continually and sharply criticized the Church with regard to this aspect of Church's mission.

During her employment and after, Alicea-Hernandez filed several charges at the Equal Employment Opportunity Commission. On July 31, 2001, the Commission issued a right-to-sue letter. Alicea-Hernandez subsequently brought suit. The district court granted the Church's 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Alicea-Hernandez now appeals that ruling.

## II. Discussion

Before reaching the merits we must address the issue of waiver. The Church argues that Alicea-Hernandez has waived any defense to the charge of a lack of subject matter jurisdiction by not responding to its motion to dismiss at the district court level. The Church further argues that Alicea-Hernandez has waived any response to the waiver charge by not addressing it in her opening brief on appeal. Alicea-Hernandez appropriately points out the lack of merit of the second argument. We do not require an appellant to anticipate and pre-emptively address all defenses that an appellee might raise. As for whether Alicea-Hernandez has waived any argument on subject matter jurisdiction, we are faced with a somewhat unusual procedural background. While it is true that Alicea-Hernandez did not respond to the Church's motion to dismiss and the district court granted that motion, she subsequently filed a motion to reconsider to which the Church did not respond. Any waiver arguments the Church had could have been made in response to the motion to reconsider. Furthermore, the

district court decided both the motion to dismiss and the motion to reconsider without reference to waiver. In granting the motion to dismiss the court gave full consideration to the questions at issue here, and in denying the motion to reconsider the court simply noted that it had already considered all of Alicea-Hernandez's arguments the first time around. Added to this, we have the *pro se* status of Alicea-Hernandez at the time the motion to dismiss was filed[1] and the confusion over the hearing that was scheduled for the motion on April 16, 2002.[2] Given this procedural journey, the district court's review of the issues, and the fact that we may affirm on the merits, for the purposes of this opinion we assume, without deciding, that Alicea-Hernandez has not waived her arguments in support of subject matter jurisdiction.

Moving on to the merits, we review *de novo* the district court's dismissal of a complaint under Rule 12(b)(1). *Rothrock v. United States*, 62 F.3d 196, 198 (7th Cir. 1995). When considering a motion to dismiss for lack of subject matter jurisdiction, a court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). The court may look beyond the jurisdictional allegations

---

[1] Alicea-Hernandez originally brought this suit *pro se*. She gained her present counsel after the motion to dismiss was granted but before she filed her motion to reconsider.

[2] The district court originally set the motion for a "status" on April 16. The court then issued, without further explanation, a written minute order setting the motion for a hearing on April 16. On that date the court issued its ruling on the motion. Alicea-Hernandez claims she did not comprehend the significance of the change from a status report to a hearing on her motion, and she therefore did not realize that she was then required to file a response.

of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. *Id.*

The Church argues that subject matter jurisdiction is lacking for two reasons, both based on the First Amendment. The first argument is that the nature of Alicea-Hernandez's claims requires the court to delve into Church policy. If the claims did require such inquiry, any decision by this court might contravene the First Amendment prohibition against excessive entanglement in matters of church policy. *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U.S. 696 (1976). But the Church has misconstrued Alicea-Hernandez's claims. The Church tries to characterize the claims as based solely on Alicea-Hernandez's disagreements with the Church about how it deals with the Hispanic community. The Church points to numerous emails and memoranda in which Alicea-Hernandez criticizes the Church's policies toward the Hispanic community. The Church does not however point to anything in the complaint suggesting that this is the basis of her claim. Alicea-Hernandez's complaint states that she is seeking relief based on the ill-treatment she received as an employee based on her gender and national origin. Her *pro se* complaint specifically states:

> I was subjected to prolonged humiliation and emotional stress of working under unequal and unfair conditions of employment; was excluded from management meetings, training and information required for me to perform my duties; was ordered evicted from the premises and replaced by a male Hispanic with less competence and experience in Hispanic communication.

Nothing in the complaint references Alicea-Hernandez's criticisms of the Church's Hispanic ministry. Alicea-

Hernandez is seeking remedy for the discrimination she allegedly suffered at work, and the Appellee cannot recharacterize her claim. While it does appear that Alicea-Hernandez was an outspoken critic of the Church's relations with the Hispanic community, this does not preclude her from bringing suit for alleged unrelated discrimination. If this case had progressed to the summary judgment stage or to trial, the Church might very well have claimed as a defense that her criticism of the Church's relations with the Hispanic community was the reason it treated her the way it did; but such a defense is not determinative at the motion to dismiss stage, and the Church never made such a claim.[3]

In this context the Church also spends a great deal of time talking about the merits of Alicea-Hernandez's claims. However the relevant question here is whether the federal courts have subject matter jurisdiction over the case. If we do not have subject matter jurisdiction, then we are not allowed to reach the merits. Our initial analysis is therefore limited to the narrow question of whether Alicea-Hernandez's discrimination claims preclude the federal courts from examining this case without violating the First Amendment. We conclude that they do not.

We turn next to the argument that Alicea-Hernandez's particular position bars the federal courts from deciding her Title VII claims. Here the Church has the stronger argument. As the Fifth Circuit first articulated in *McClure*

---

[3] Such a defense might have eventually established a non-invidious explanation for the treatment. Alternatively, it might have raised a question into which the courts have no jurisdiction to inquire. That is, it may have raised a question of whether the Church can discharge someone who internally questions and publicly criticizes the way it has chosen to advance its message.

*v. The Salvation Army*, 460 F.2d 553, 560 (5th Cir. 1972), "application of the provisions of Title VII to the employment relationship existing between . . . a church and its minister would result in an encroachment by the state into an area of religious freedom which it is forbidden to enter by the principles of the free exercise clause of the First Amendment." This rule, often referred to as "the ministerial exception," was further developed by the Fourth Circuit in *Rayburn v. General Conference of Seventh-day Adventists*, 772 F.2d 1164 (4th Cir. 1985), and adopted by this circuit in *Young v. The Northern Illinois Conference of United Methodist Church*, 21 F.3d 184 (7th Cir. 1994). The court in *Rayburn,* recognizing tensions between freedom of religion on the one hand and the attempt to eradicate discrimination on the other, concluded that in the context of Title VII claims brought against a church by its ministers the "balance weighs in favor of free exercise of religion." 772 F.2d at 1168. The court explained that the "right to choose ministers without government restriction underlies the well-being of religious community." *Id.* at 1167. While this ruling may seem in tension with Title VII, we concur with the Fourth Circuit when it stated: "While an unfettered church choice may create minimal infidelity to the objectives of Title VII, it provides maximum protection of the First Amendment right to free exercise of religious beliefs." *Id.* at 1169.

In determining whether an employee is considered a minister for the purposes of applying this exception, we do not look to ordination but instead to the function of the position. *Young*, 21 F.3d at 186; *see also EEOC v. Roman Catholic Diocese,* 213 F.3d 795, 801 (4th Cir. 2000) ("Our inquiry thus focuses on 'the function of the position' at issue and not on categorical notions of who is or is not a 'minister.'"). The question for us to answer therefore is whether Alicea-Hernandez's position as Hispanic Communications Manager can functionally be classified

as ministerial. Alicea-Hernandez suggests that we also need to look to the nature of her claims and whether the discrimination in question was exclusively secular. Here she is mistaken. The "ministerial exception" applies without regard to the type of claims being brought. This was explained by the Fourth Circuit in *EEOC v. Roman Catholic Diocese*:

> [T]he ministerial exception to Title VII is robust where it applies. . . . The exception precludes any inquiry whatsoever into the reasons behind a church's ministerial employment decision. The church need not, for example, proffer any religious justification for its decision, for the Free Exercise Clause "protects the act of a decision rather than a motivation behind it."

213 F.3d at 802 (quoting *Rayburn*, 772 F.2d at 1169). To rule otherwise would enmesh the court in endless inquiries as to whether each discriminatory act was based in Church doctrine or simply secular animus. The Fifth Circuit has provided the following rationale for this rule:

> [A]n investigation and review of such matters of church administration and government as a minister's salary, his place of assignment and his duty, which involve a person at the heart of any religious organization, could only produce by its coercive effect the very opposite of that separation of church and State contemplated by the First Amendment.

*McClure,* 460 F.3d at 560.

It is therefore not our role to determine whether the Church had a secular or religious reason for the alleged mistreatment of Alicea-Hernandez. The only question is that of the appropriate characterization of her position. Both sides agree that, in her capacity as Hispanic Communications Manager, Alicea-Hernandez served in part as a press secretary. Her official duties included composing media releases and correspondence as well as develop-

ing a working relationship with various constituencies of the Hispanic community and composing articles to be published in the Church media. Whether the ministerial exception applies to the position of press secretary is a novel question in this circuit. Although the parties cite numerous cases dealing with positions such as teachers, music directors, and youth counselors, the cases provide limited guidance in making the determination required here. Unlike those positions, a press secretary is responsible for conveying the message of an organization to the public as a whole. A press secretary, as is evident from observing various public officials and entities, is often the primary communications link to the general populace. The role of the press secretary is critical in message dissemination, and a church's message, of course, is of singular importance. As the D.C. Circuit stated, "[D]etermination of whose voice speaks for the church is *per se* a religious matter." *Minker v. Baltimore Annual Conference of the United Methodist Church*, 894 F.2d 1354, 1356 (D.C. Cir. 1990) (internal quotation marks omitted). Indeed, the rationale for the ministerial exception is founded upon the principle that "perpetuation of a church's existence may depend upon those whom it selects to preach its values, teach its message, and interpret its doctrines both to its own membership and to the world at large." *Rayburn*, 772 F.2d at 1168.

In *Rayburn* the Fifth Circuit characterized the position of Associate in Pastoral Care as ministerial because the Associate was "a liaison between the church as an institution and those whom it would touch with its message." *Id.* Alicea-Hernandez also served as a liaison between the Church and the community to whom it directed its message. As Hispanic Communications Manager, Alicea-Hernandez was integral in shaping the message that

the Church presented to the Hispanic community.[4] We therefore conclude that Alicea-Hernandez served a ministerial function for the Church and her Title VII claims are therefore barred by the First Amendment.

### III.  Conclusion

Although we cannot adopt the district court's characterization of Alicea-Hernandez's claims, we agree with the district court that in her capacity as a Hispanic Communications Manager she served a ministerial function for the Church. We therefore AFFIRM the dismissal of her claims for lack of subject matter jurisdiction.

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

---

[4] We note that the realities of the position and not the title render her position ministerial. As the Church acknowledges, if she had simply served in the capacity of translating the message from English to Spanish, this would be a different case; but Alicea-Hernandez was responsible for both crafting the message and determining how best to reach the Hispanic community.