**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 13, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MONICA MARIA SKRZYPCZAK,

Plaintiff-Appellant/
Cross-Appellee,

v.

ROMAN CATHOLIC DIOCESE OF
TULSA; EDWARD JAMES
SLATTERY,

Defendants-Appellees/
Cross-Appellants.

Nos. 09-5089 and 09-5095

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 4:08-CV-00298-GKF-PJC)**

---

Daniel E. Smolen (Donald E. Smolen, II, with him on the briefs), of Smolen, Smolen & Roytman, PLLC, Tulsa, Oklahoma, for Plaintiff-Appellant/Cross-Appellee.

John B. Jarboe of Jarboe & Stoermer, P.C., Tulsa, Oklahoma, (J. Daniel Morgan of Newton, O'Connor, Turner & Ketchum, Tulsa, Oklahoma, with him on the briefs) for Defendants-Appellees/Cross-Appellants.

---

Before **LUCERO**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

**McKAY**, Circuit Judge.

In this case we consider whether the district court correctly granted summary judgment in favor of the Roman Catholic Diocese of Tulsa on a former employee's federal employment law claims, based on the ministerial exception to Title VII. After considering the parties' arguments and the evidence in the record before us, we hold that the district court correctly dismissed the claims.

## BACKGROUND

In April of 1996, the Appellant, Monica Skrzypczak, began work as the director of the Department of Religious Formation for the Roman Catholic Diocese of Tulsa. As director, Appellant's principal responsibilities included, among other things, "[k]eep[ing] the Chancellor informed on [the] Department's activities"; "developing office goals, objectives, policies and programs" and overseeing their implementation; overseeing office staffing; promoting "intra- and inter-departmental collaboration and cooperation"; supervising "the Diocesan Resource Libraries"; and overseeing the budget in different offices. (Appellant's App. at 170.) Appellant's duties also required her to "[s]upervis[e] the Office of Religious Formation, Pastoral Studies Institute, and Office of Youth and Young Adult Ministry overseeing office communications, publications, and reports."[1]

_____

[1] The Pastoral Studies Institute's stated purpose is to "provide the necessary educational opportunities for those individuals seeking to further their knowledge of the Catholic faith" and to "provide a solid foundation in Catholic theology to educate, nourish, strengthen, and renew the Catholic faith and Church in

(continued...)

(Appellant's App. at 170.)  Finally, it is undisputed that, in addition to having a

supervisory role over the Pastoral Studies Institute, Appellant taught or facilitated

numerous religious courses at the Institute from the fall of 1999 through the

spring of 2007.[2]

Throughout her time as director of the Department of Religious Formation,

Appellant allegedly received positive performance reviews but was ultimately

terminated from her position in June of 2007.  Following her termination,

Appellant brought suit against the Diocese and the Bishop of the Diocese, Edward

James Slattery, alleging, inter alia, gender and age discrimination.  Specifically,

Appellant brought claims under Title VII of the Civil Rights Act for gender

discrimination, disparate impact based on gender, and hostile work environment.

Appellant also brought federal law claims for violation of the Age Discrimination

---

[1](...continued)
Oklahoma."  (Appellees' Supplemental App. at 1.)

[2] This included the following courses: "Question of the Soul: Spirituality in Every Facet of Daily Living" in fall 1999; "Brother Lawrence of the Resurrection: Spirituality In your Everyday Life" in spring 2000; "John Paul II and the Vocation of Women: Letter to Women" in fall 2000; "On the Christian Meaning Of Human Suffering" in spring 2001; "Christological Dimensions In Selected Readings of Flannery O'Connor" in fall 2001; "C.S .Lewis [sic] & Christianity" in spring 2002; "C.S. Lewis and Christianity The Problem of Pain" in fall 2002; "Images of Christ in Film" in spring 2003; "Catholic Etiquette: Back to the Basics" in fall 2003; "Book of Ruth: A Feel-Good Message for Contemporary Society" in spring 2004; "John Paul II and Genius of Women" in fall 2004; "The Catholic Mystique; Women Converts Tell Their Stories" in spring 2006; "C.S. Lewis: The Great Divorce" in fall 2006; and "The Seven Last Words Of Christ: A Bible Study On Jesus' Passion" in spring 2007.  (Appellees' Supplemental App. at 10-13.)

in Employment Act and the Equal Pay Act, as well as two state law claims for breach of contract and intentional infliction of emotion distress.

In response to these claims, the Diocese filed a Rule 12(b)(1) motion to dismiss, claiming under the ministerial exception to Title VII the court lacked subject matter jurisdiction over Appellant's federal employment law claims. The district court re-characterized the Diocese's motion as one brought pursuant to Rule 12(b)(6). Then, pointing to a copy of Appellant's job description the Diocese had attached to its motion, the court further converted the Diocese's motion to one for summary judgment under Rule 56 and directed the parties to file supplemental materials in support of their positions. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment."). Following this ruling, Appellant filed a motion to extend the deadline for the supplemental briefs, alleging the Diocese had failed to respond to numerous discovery requests. The court denied this motion. Appellant then filed her supplemental brief accompanied by a motion to compel discovery.

After considering both parties' supplemental briefs, the district court granted summary judgment in favor of the Diocese on Appellant's federal claims based on the ministerial exception. In making this ruling, the district court disregarded three affidavits from various church officials that Appellant had

submitted in opposition to the Diocese's motion. The court held these affidavits, each of which contained the exact statement based on language from a Fourth Circuit case, were "nothing more than conclusions of law" which failed to create a material issue of fact. (Appellant's App. at 223.) Finally, the court dismissed Appellant's remaining state law claims under 28 U.S.C. § 1367(c)(3). On appeal, Appellant challenges both the district court's rulings concerning discovery and the court's ultimate decision to dismiss her claims. Additionally, despite prevailing before the district court, the Diocese has entered a cross-appeal alleging the court erred by converting its Rule 12(b)(1) motion to one for summary judgment under Rule 56.

## DISCUSSION

As a preliminary issue, we first address the Diocese's cross-appeal.[3] In converting the Diocese's motion to a motion for the summary judgment, the district court relied on our decision in *Bryce v. Episcopal Church in the Diocese*

---

[3] The Diocese's notice of appeal named the "Most Reverend Edward James Slattery, individually, and as Bishop of the Roman Catholic Diocese of Tulsa" as the appellant. (Doc. 51.) Because this notice gave no indication the Diocese itself was appealing, we ordered the Diocese to clarify whether it was an appellant under Rule 3(c)(1)(A) of the Federal Rules of Appellate Procedure (providing that a notice of appeal must "specify the party or parties taking the appeal by naming each one in the caption or body of the notice"). The Diocese responded that "the only person having authority to act on behalf of the Diocese is its Bishop . . . . [S]uch notice was intended to indicate that both he and the [Diocese] were appealing." (Doc. 9675042 at 1.) We are satisfied the Diocese is an appellant in this case.

*of Colorado*, 289 F.3d 648 (10th Cir. 2002). In *Bryce* we considered this same issue in the context of the church autonomy doctrine. We stated "[t]he crucial element is the substance of the motion" and held the motion in that case "would more appropriately be considered as a challenge to the sufficiency of plaintiff's claims under Rule 12(b)(6)." *Id.* at 654. On appeal the Diocese argues *Bryce* does not control in this case because it was based on an application of the broader church autonomy doctrine, rather than the doctrine's ministerial exception.[4]

As the Third Circuit has explained, "it is beyond cavil that a federal district court has the authority to review claims arising under federal law." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006). The essential question then, when considering the ministerial exception, is not whether the district court has the power to consider a plaintiff's claims, "but rather whether the First Amendment bars [that plaintiff's] claims." *Id.* Thus, the ministerial exception, like the broader church autonomy doctrine, can be likened "to a government official's defense of qualified immunity," *Bryce*, 289 F.3d at 654; both "may serve as a barrier to the success of a plaintiff's claims, but [neither] affect[s] the court's authority to consider them." *Petruska*, 462 F.3d at 303. Therefore, our

---

[4] "Th[e] church autonomy doctrine prohibits civil court review of internal church disputes involving matters of faith, doctrine, church governance, and polity." *Bryce*, 289 F.3d at 655. Out of this broad prohibition, the courts have carved a narrower ministerial exception, discussed in greater detail *infra*, "that prevents adjudication of Title VII employment discrimination cases brought by ministers against churches." *Id.* at 656.

holding in *Bryce* that a motion to dismiss based on the church autonomy doctrine should be considered under Rules 12(b)(6) or 56 rather than 12(b)(1) is equally applicable in cases involving the ministerial exception. We accordingly hold the district court did not err in converting the Diocese's motion to one for summary judgment.

Having addressed the Diocese's cross-appeal, we now turn to the issues raised by the Appellant. First, Appellant alleges the trial court erred by denying her request for an extension of time to file her supplemental brief and by not granting her motion to compel. We review both the district court's decision to deny Appellant's request for an extension of time and its decision to grant summary judgment before ruling on Appellant's motion to compel for an abuse of discretion. *See Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1193 (10th Cir. 1998) (reviewing for abuse of discretion the denial of an extension of time under Federal Rule of Civil Procedure 6(b)); *Campfield v. State Farm Mut. Auto Ins. Co.*, 532 F.3d 1111, 1124 (10th Cir. 2008) (reviewing for abuse of discretion a decision not to rule on a "pending discovery motion" before granting summary judgment). Appellant argues the court abused its discretion because she had "not had the opportunity to discover information that [wa]s essential to [her] opposition." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986).

We begin by noting Appellant did not file an affidavit under Rule 56(f) and has thus "waived the argument that the grant of summary judgment should be set

aside for lack of sufficient discovery." *Campfield*, 532 F.3d at 1124. However, even if we ignore Appellant's waiver, there was no abuse of discretion because Appellant has not explained "why facts precluding summary judgment [could] not be presented." *Id.* The only relevant evidence that Appellant claims to be seeking is information on what she did in her position with the Diocese; however, the best source of that information is Appellant herself. Indeed, Appellant could easily have presented information to the court in a personal affidavit along with her supplemental brief. She had the same opportunity as the Diocese to present evidence, but she did not. Accordingly, the court did not abuse its discretion by denying Appellant's discovery motions.

We now consider the district court's determination that summary judgment was appropriate under the ministerial exception. The ministerial exception preserves a church's "essential" right to choose the people who will "preach its values, teach its message, and interpret its doctrines[,] both to its own membership and to the world at large," free from the interference of civil employment laws. *Bryce*, 289 F.3d at 656 (internal quotation marks omitted). Although the doctrine usually comes into play in employment suits between an ordained minister and her church, it extends to any employee who serves in a position that "is important to the spiritual and pastoral mission of the church." *Rayburn v. Gen. Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1169 (4th Cir. 1985).

We review the district court's determination to grant summary judgment de novo. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). In so doing "we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Id.* Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Although the Diocese bears the initial burden, once its meets this burden Appellant "may not rest on [her] pleadings, but must bring forward specific facts showing a genuine issue for trial." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)).

In support of its motion for summary judgment, the Diocese presented a copy of Appellant's job description, which included a list of her primary duties. The Diocese also brought forward Appellant's employment application, a list of religious courses that Appellant taught at the Diocese's Pastoral Studies Institute, Institute's mission statement, and an affidavit from Bishop Slattery describing Appellant's role at the Institute and as the director of the Department of Religious Formation. After reviewing these materials, we have no doubt that Appellant's principal duties included at least some tasks that were purely administrative in nature. However, the evidence also tends to show her position was not limited to

a merely administrative role, but it also involved responsibilities that furthered the core of the spiritual mission of the Diocese.

First, Appellant's position required her to supervise the Pastoral Studies Institute, whose stated purpose is to "provide a solid foundation in Catholic theology to educate, nourish, strengthen, and renew the Catholic faith." (Appellees' Supplemental App. at 1.)  According to Bishop Slattery, Appellant's duties in connection with the Institute included "the development and planning of theological and other religious education programs."  (Appellant's App. at 208.) Indeed, the record indicates Appellant taught multiple religious courses at the Institute; a fact which seems particularly damning in this case.  Additionally, Bishop Slattery indicated "Religious Formation is, by definition, the formation of a person's faith life, and includes the teaching of dogma, the traditions and ritual of the Catholic Faith and instruction in religious truths and values as an integral part of building a life of faith and Christian attitudes."  (Appellant's App. at 208.) Thus, even Appellant's job title as the director of the Department of Religious Formation indicates her importance to the spiritual and pastoral mission of church, especially when considered in conjunction with her statement, taken from her employment application, that she wished "to use [her] talents and experience in education to promote the Catholic faith through [her] leadership as Director of Religious Formation."  (Appellees' Supplemental App. at 6.)  In light of this evidence, we agree with the district court that the Diocese has met its burden of

showing that Appellant's position was "important to the spiritual and pastoral mission of the [Diocese]." *Rayburn*, 772 F.2d at 1169.

However, Appellant argues, despite the above-cited evidence, the three affidavits she submitted in opposition to the Diocese's motion show the existence of a material issue of fact concerning the ministerial exception's application. All three affidavits contain identical language, beginning with the conclusion that "[Appellant's] job was purely administrative," and continuing with the statement, taken almost verbatim from *Rayburn*, that "[the job] in no way required or involved a primary function of teaching, spreading the faith, control of church governance, supervision of a religious order, or supervision or participation in religious ritual in worship." (Appellant's App. at 161-65.)

"To survive summary judgment, nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995) (internal quotation marks omitted). Despite Appellant's contentions, these affidavits are exactly the type of conclusory affidavits that are insufficient to overcome summary judgment. Even if we accept these affidavits are based on personal knowledge, they do not set forth any facts, admissible or otherwise, that a court could consider as raising a material issue of fact. Instead, each affidavit merely parrots a general rule that a court could consider in determining the ministerial exception's application and

-11-

then states, in the affiant's opinion, the legal conclusion the court should reach. Accordingly, we hold the district court did not err in its determination that Appellant was a minister for purposes of the exception.

Finally, Appellant argues the district court erred when it dismissed all of her federal and state claims, even assuming the district court properly classified Appellant as a minister for purposes of the exception. According to Appellant, her Title VII claim for hostile work environment and her Equal Pay Act claim, as well as her state claims for breach of contract and intentional infliction of emotional distress, should be allowed to proceed because these claims do not involve a protected employment decision. In so arguing Appellant urges us to follow the Ninth Circuit's opinion in *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 959 (9th Cir. 2004). This decision permits an individual to bring claims for hostile work environment under Title VII against a church, despite her classification as a minister, so long as the church does not claim "doctrinal reasons for tolerating or failing to stop the [alleged] sexual harassment." *Id.* at 963. Under the Ninth Circuit's reasoning, such a "restricted, secular inquiry" does not run afoul of the First Amendment because it does not involve the review of a protected employment decision such as hiring or firing. *Id.*

"Of course churches are not—and should not be—above the law." *Rayburn*, 772 F.2d at 1171. Churches "may be held liable for their torts and upon their valid contracts." *Id.* Additionally, as the Fourth Circuit stated in *Rayburn*,

and we restated in *Bryce,* a church's "employment decision[] may be subject to Title VII scrutiny, where the decision does not involve the church's spiritual functions." *Bryce*, 289 F.3d at 657 (quoting *Rayburn*, 772 F.2d at 1171). Nevertheless, we are not inclined to agree with the Ninth Circuit's reasoning that a hostile work environment claim brought by a minister does not implicate a church's spiritual functions. Rather, we believe that allowing such a claim may, as Judge Trott stated in his dissent from *Elvig*, "involve gross substantive and procedural entanglement with the Church's core functions, its polity, and its autonomy." *Elvig*, 375 F.3d at 976 (Trott, J., dissenting); *see also Scharon v. St. Luke's Episcopal Presbyterian Hosp.*, 929 F.2d 360, 363 (8th Cir. 1991) (holding that review of church personnel decisions "would require the courts to determine the meaning of religious doctrine and canonical law and to impose a secular court's view of whether in the context of a particular case religious doctrine and canonical law support the decision the church authorities have made"). We are also persuaded that such an approach could, as Judge Kleinfeld argued in his dissent from the denial of rehearing of *Elvig*, infringe on a church's "right to select, manage, and discipline [its] clergy free from government control and scrutiny" by influencing it to employ ministers that lower its exposure to liability rather than those that best "further [its] religious objective[s]." *Elvig v. Calvin Presbyterian Church*, 397 F.3d 790, 803-04 (9th Cir. 2005) (order denying petition for rehearing) (Kleinfeld, J., dissenting). Instead, we choose to follow

-13-

the Seventh Circuit's decision in *Alicea-Hernandez v. Catholic Bishop of Chicago*, 320 F.3d 698 (7th Cir. 2003), which, in our opinion, is the better-reasoned approach.

In *Alicea-Hernandez*, a minister brought claims under Title VII based in part on her work environment, which she claimed were not subject to the ministerial exception because "the discrimination in question was exclusively secular." 320 F.3d at 703. The court rejected this argument, holding "the ministerial exception applies without regard to the type of claims being brought." *Id.* (internal quotation marks omitted). The court explained "[t]o rule otherwise would enmesh the court in endless inquiries as to whether each discriminatory act was based in Church doctrine or simply secular animus." *Id.* We agree. The types of investigations a court would be required to conduct in deciding Title VII claims brought by a minister "could only produce by [their] coercive effect the very opposite of that separation of church and State contemplated by the First Amendment." *McClure v. Salvation Army*, 460 F.2d 553, 560 (2d Cir. 1972).

This approach provides greater clarity in the exception's application and avoids the kind of arbitrary and confusing application the Ninth Circuit's approach has created. *See Wert v. Desert Sw. Annual Conference*, 377 F.3d 1099, 1103 (9th Cir. 2004) (holding that, while claims for hostile work environment based on sexual harassment are not part of a protected employment decision subject to the ministerial exception, claims for hostile work environment based on

-14-

the failure to accommodate a disability "*are* a part of the minister's employment relationship with the church" and are barred by the exception).  We also believe this rule is not inconsistent with our statement in *Bryce*, taken from *Rayburn*, that a church employment decision "may be subject to Title VII scrutiny, where [it] does not involve the church's spiritual function."  *Bryce*, 289 F.3d at 657 (quoting *Rayburn*, 772 F.2d at 1171).  In making the above quoted statement, the *Rayburn* court only cited to cases where the plaintiff was found not to be a minister, *see Rayburn*, 772 F.2d 1171-72, and we conclude any Title VII action brought against a church by one of its ministers will improperly interfere with the church's right to select and direct its ministers free from state interference.  Thus, we hold that because Appellant is a minister for purposes of the exception, her Title VII hostile work environment claim is barred.

Similarly, the trial court did not err in dismissing Appellant's claims under the Equal Pay Act.  It is well settled that "[j]ust as the initial function of selecting a minister is a matter of church administration and government, so are the functions which accompany such a selection.  It is unavoidably true these include the determination of a minister's salary, his place of assignment, and the duty he is to perform in the furtherance of the religious mission of the church."  *McClure*, 460 F.2d at 559; *see also, e.g., Granfield v. Catholic Univ. of Am.*, 530 F.2d 1035, 1047 (D.C. Cir. 1976); *Alcazar v. Corp. of Catholic Archbishop of Seattle*, 598 F.3d 668, 674 (9th Cir. 2010).  We agree with these courts and hold the

-15-

ministerial exception bars claims by a minister concerning the functions which accompany her selection, which includes claims brought under the Equal Pay Act.

Finally, because the district court properly dismissed Appellant's federal claims, it did not err in dismissing her remaining state law claims under 28 U.S.C. §1367(c)(3). *See Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007).

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment for the defendants.